**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HARRISON DIVISION**

**GLENANNE J. JOHNSON** **PLAINTIFF**

**V.** **CASE NO. 3:25-CV-3042**

**UNITED STATES AIR FORCE,**
**Secretary of the U.S. Air Force,**
**in His Official Capacity** **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Now before the Court are a Motion to Dismiss (Doc. 30) and Brief in Support (Doc. 31) filed by Defendant United States Air Force ("USAF") and a Response in Opposition (Doc. 36) filed by Plaintiff Glenanne Johnson. Ms. Johnson proceeds *pro se* and *in forma pauperis*. On August 10, 2026, the Court held an in-person hearing on the Motion and entertained oral argument from the parties. Following oral argument, the Court ruled from the bench, **GRANTING IN PART AND DENYING IN PART** USAF's Motion to Dismiss and preserving only Counts III and IV of the Amended Complaint for further litigation. This written Order explains the Court's reasoning. To the extent it differs from what was stated from the bench, the written Order will control.[1]

## I. BACKGROUND

Ms. Johnson is a chemical engineer who was employed in a civilian capacity by various branches of the armed forces. Her most recent employer was USAF. In her Amended Complaint, she contends that USAF discriminated against her on the basis of sex under Title VII of the Civil Rights Act, failed to provide her reasonable

[1] The day after the hearing, Ms. Johnson filed a Motion for Reconsideration (Doc. 48) explaining why she disagreed with the Court's dismissal of certain claims. The Court has considered her arguments and **DENIES** the Motion.

accommodations for her disability under the Rehabilitation Act ("RA"), retaliated against her for whistleblowing in violation of the Whistleblower Protection Act ("WPA"), deprived her of wages in violation of the Fair Labor Standards Act ("FLSA") and the Equal Pay Act ("EPA"), and denied and restricted her access to leave under the Family and Medical Leave Act ("FMLA"). During the five years she worked for USAF, she filed several administrative complaints alleging personnel disputes, unlawful discrimination, and retaliation for protected activity.

Ms. Johnson's first job with USAF started in September 2020, when she was hired to work for the Air Force Nuclear Weapons Center. (Doc. 19, ¶ 53). In short order, she "identified critical deficiencies in the Ground Based Strategic Deterrent (GBSD/Sentinel) program." *Id.* ¶ 61. One such alleged deficiency was "the presence of unlawful foreign materials and malicious code in critical USAF systems." *Id.* ¶ 66. She then "made a series of high-level protected disclosures . . . regarding grave national security risks" which she claims were "publicly confirmed" as true. *Id.* ¶¶ 63, 65. In the midst of this whistleblowing activity, Ms. Johnson was diagnosed with an autoimmune disorder called scleroderma, and "due to escalating health issues related to her scleroderma," she requested a transfer to a new position "that did not require full-time work" and could accommodate her disability. *Id.* ¶ 70. However, before she could secure a transfer, her supervisors retaliated against her for whistleblowing by "fabricat[ing] a false security incident." *Id.* ¶ 72. Her transfer was denied, and the security incident was documented in her personnel file. *Id.* ¶ 74.

In April 2021, Ms. Johnson filed an administrative complaint regarding the "false security incident" and a related claim that USAF had withheld her pay for some period of

time. *Id.* ¶ 77. She ultimately withdrew the complaint after the security incident was wiped from her file. *See id.* ¶ 78. Next, in June 2021 she accepted a transfer to the Air Force Operational Test and Evaluation Center, which offered to accommodate her disability. *Id.* ¶ 96. According to Ms. Johnson, the new job "required minimal classified access" and therefore "allowed [her] to be reachable for family medical emergencies, a problem she had previously faced at [her previous position]." *Id.*

Unfortunately, shortly after Ms. Johnson started this new job, "the retaliation against her continued and escalated." *Id.* ¶ 97. She became dissatisfied with her working conditions and on June 28, 2021, "submitted the first of eight separate, medically-supported requests for reasonable accommodation under the Rehabilitation Act." *Id.* ¶ 101. The Amended Complaint is silent as to the nature of each of these eight accommodation requests. On September 8, she "verbally requested [accommodations] again" and "was directed to USAF disability Manager Sundra Thomas," who "ignored" the requests. *Id.* ¶ 112. Ms. Johnson then approached one of her supervisors, Nick Adams, and "verbally requested reasonable accommodation," but he also "ignored the request." *Id.* ¶ 130. On October 28, Ms. Thomas asked Ms. Johnson to complete paperwork in support of the accommodation request and provide medical documentation. *Id.* ¶ 148. At that point, Ms. Johnson was asking for "a maxi-flex schedule with expanded hours and occasional telework," which she claims had been granted to "her disabled white male co-worker, Dean Metzger." *Id.* ¶ 149.[2]

In November 2021, Ms. Thomas, Mr. Adams, and another supervisor named James Eck met with Ms. Johnson about her request for a "maxi-flex" schedule. Ms.

---

[2] Mr. Metzger's disability is not revealed in the Amended Complaint.

Johnson maintains that "[d]uring the meeting, Defendant Adams falsely claimed [Ms. Johnson] had never requested accommodation and accused her of 'self-diagnosing,' despite her documented diagnoses from seven medical specialists." *Id.* ¶ 153. After the meeting, Mr. Eck contacted Ms. Johnson's rheumatologist and asked him to provide the agency with her entire medical record, but the doctor refused. *Id.* ¶¶ 155–56.

On December 1, 2021, Ms. Johnson was directed to provide USAF "another medical certification at her own expense." *Id.* ¶ 159. In the meantime, she received word that she would be promoted to a position at "Headquarters Air Force Acquisition (HAF/AQ) at the Pentagon." *Id.* ¶ 167. However, she believes her supervisors blocked the promotion after she missed an in-person meeting while "teleworking due to her son's school closure." *Id.* ¶ 169. Ms. Johnson promptly filed "an internal USAF grievance over the blocked promotion, delayed [RA] process, and retaliation." *Id.* ¶ 177. However, her grievance was "closed without investigation on February 2, 2022," *id.*, and she was advised to pursue administrative remedies with the Merit Systems Protection Board ("MSPB")—an independent agency established by the Civil Service Reform Act of 1978 ("CSRA") to adjudicate federal employee complaints regarding personnel matters.

At the start of 2022, Ms. Johnson told her superiors that she believed "foreign chips with security vulnerabilities had been fielded in all conventional USAF weapons systems . . . for up to 15 years." *Id.* ¶ 184. She characterizes this disclosure as whistleblowing. Mr. Eck allegedly retaliated against Ms. Johnson in February by accusing her of "multiple false security incidents." *Id.* ¶ 198. In response, she reported Mr. Eck "as a potential extremist under DOD Instruction 1325.06, citing his repeated retaliatory actions, disability abuse, and misuse of personnel and security processes." *Id.* ¶ 208.

The following month, March 2022, Ms. Johnson claims she was off work on "approved bereavement leave" when she "assisted U.S. military teams involved in evacuating Americans from Ukraine near a nuclear power plant fire." *Id.* ¶ 219. Also that same month, Ms. Johnson suffered a scleroderma flare up and "lost dexterity in her hands and feet." *Id.* ¶ 244. She put in a request for sick leave, but Mr. Eck denied it, "removed her telework privileges[,] and proposed a 5-day suspension while she was on approved FMLA [leave]." *Id.* ¶¶ 245, 254. She had been under the impression that she could take "intermittent FMLA" leave at her discretion from April 1, 2022, to March 28, 2023. *Id.* ¶ 259. However, Mr. Eck demanded she appear at work "in person" during this time. *Id.* ¶ 263.

On April 28, Ms. Johnson "notified Defendant Eck that she required surgery on June 9, 2022, and would need to take FMLA leave for 30–60 days to recover." *Id.* ¶ 293. But shortly after that, Mr. Eck confiscated Ms. Johnson's desktop computer. *Id.* ¶ 298. She claims all the whistleblowing evidence she had collected over the years was "purge[d] . . . from USAF computer servers." *Id.* ¶ 301. She was informed by Mr. Eck and Ms. Thomas that "she had three days to either accept a reassignment to a lower-graded position or be removed from federal service." *Id.* ¶ 319. This announcement was followed by a negative performance evaluation. *See id.* ¶ 327. Soon after, Mr. Eck convened a "medical board" to review the nature of Ms. Johnson's claimed disability and allegedly disclosed her private medical information to those "who had no legitimate, official need to know." *Id.* ¶ 351. Mr. Eck also recommended that her security clearance be revoked. *See id.* ¶ 366.

On August 17, 2022, Ms. Johnson filed an administrative complaint with the MSPB and requested a hearing. *Id.* ¶ 411. At the same time, she received "medical retirement" paperwork. *Id.* ¶ 388. On August 24, Ms. Thomas denied Ms. Johnson's request for "100% telework" and explained the accommodation was impossible because "100% remote" positions that were then available required a security clearance—which Ms. Johnson no longer possessed. *Id.* ¶ 414.

Ms. Johnson's medical retirement was approved by USAF on December 27, 2022. *Id.* ¶ 458. She contends she was "forced" into retirement. *Id.* ¶ 459.

Approximately two and a half years later, on July 11, 2025, Ms. Johnson filed her original complaint in this Court. In December she filed an Amended Complaint, which is 145 pages long, contains 13 causes of action, and attaches 11 separate exhibits totaling over 2,000 pages. The United States on behalf of USAF filed a Motion to Dismiss (Doc. 30), arguing that the Court lacks subject matter jurisdiction over several claims and that others fail to state a claim upon which relief can be granted. Ms. Johnson filed a Response in Opposition to the Motion (Doc. 36), making it ripe for decision.

## II. LEGAL STANDARDS

### A. District Court Review of Federal Employment Disputes

The CSRA establishes a comprehensive system of administrative and judicial review for federal employment disputes. *See Kloeckner v. Solis*, 568 U.S. 41, 44–45 (2012). For serious personnel actions, the employee may appeal the agency's decision to the MSPB and allege that the agency had insufficient cause for taking the action it did and/or that the agency discriminated against the employee in violation of Title VII, the RA, or the EPA. *See* 5 U.S.C. §§ 1204, 7512, 7701.

Generally, the Federal Circuit has jurisdiction over MSPB appeals. This statutory scheme fulfills one "indisputable Congressional objective" that "the Federal Circuit should be the uniform voice in federal personnel matters." *Afifi v. U.S. Dep't of the Interior,* 924 F.2d 61, 64 (4th Cir. 1991). However, an exception to Federal Circuit jurisdiction exists for MSPB appeals that involve both personnel disputes and discrimination claims. *See* 5 U.S.C. § 7702(a)(1). "When an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a 'mixed case.'" *Kloeckner*, 568 U.S. at 44 (emphasis in original) (citing 29 C.F.R. § 1614.302). In a "mixed case," the employee may seek immediate judicial review in a federal district court. "That is so whether the MSPB decided her case on procedural grounds or instead on the merits." *Id.* at 56.

When a mixed-case appeal is presented to the district court, it must consider "the discrimination claim *de novo* and the nondiscrimination claim on the administrative record under 5 U.S.C. § 7703(c)." *Mason v. Frank*, 32 F.3d 315, 317 (8th Cir. 1994). A non-discrimination claim may only be set aside "if required procedures have not been followed, the decision is arbitrary, or the decision is not supported by substantial evidence." *Id.*

**B. Dismissal under Rules 12(b)(1) and (b)(6)**

USAF contends that several of the claims Ms. Johnson asserts in the Amended Complaint are subject to dismissal for lack of subject matter jurisdiction. The law is clear that certain claims brought in a mixed-case appeal must be exhausted before filing suit. *See McAdams v. Reno,* 64 F.3d 1137, 1141 (8th Cir. 1995). On a Rule 12(b)(1) motion challenging subject matter jurisdiction, the court "has authority to consider matters outside the pleadings" in order to satisfy itself that it may adjudicate the claims. *Osborn v. United*

*States*, 918 F.2d 724, 728 n.4 (8th Cir. 1990). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on jurisdiction. *Id.* at 729 n.6. In a facial attack, "the court restricts itself to the face of the pleadings," but "[i]n a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* Here, USAF mounts a factual attack on jurisdiction by arguing some of the claims Ms. Johnson asserts here were not appropriately exhausted before the MSPB prior to bringing suit. See Doc. 19-1, pp. 122–47 (April 7, 2025 MSPB Decision).

Separately, USAF argues that some claims in the Amended Complaint that did not need to be exhausted before filing suit should nonetheless be dismissed under Rule 12(b)(6). Each cause of action "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth." *Id.* Instead, "[t]he complaint must allege facts, which, when taken as true, raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

## III. DISCUSSION

Ms. Johnson timely appealed to this Court the MSPB's April 7, 2025 decision. The Court has compared the claims that were brought before the MSPB to those listed in the

Amended Complaint and concludes that two of the claims were appropriately exhausted: Count III of the Amended Complaint alleging violations of the WPA and Count IV alleging discrimination, retaliation, and failure to reasonably accommodate in violation of the RA.

Since Count III is a non-discrimination claim and Count IV is a discrimination claim, Ms. Johnson presents a mixed-case appeal over which this Court has subject matter jurisdiction. Therefore, in evaluating Count III, the Court will review the administrative record to determine if the MSPB's dismissal of the WPA claim was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without proper procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). As for Count IV, the Court will consider the RA claim *de novo*.

All other causes of action in the Amended Complaint are **DISMISSED** for the following reasons:

- **Counts I and II**, alleging violations of the Fifth and First Amendments to the Constitution, are dismissed under Rule 12(b)(6). Ms. Johnson attempts to reframe her whistleblower and personnel claims as unconstitutional burdens on her property and free-speech rights. Although in certain circumstances a cause of action may be maintained against federal agents for violating a citizen's constitutional rights, *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), no such action may be maintained against a federal agency, *see FDIC v. Meyer*, 510 U.S. 471, 486 (1994). These claims are therefore subject to dismissal.

- **<u>Count V</u>**, alleging FMLA interference and retaliation, is dismissed under Rule 12(b)(1). Federal employees are covered by Title II of the FMLA. *See Mann v. Haigh*, 120 F.3d 34, 36 (4th Cir. 1997). Title II does not afford a private right of action. *See id.* Instead, federal employees must bring FMLA claims before the MSPB. The only FMLA claim discussed in the MSPB's decision is Ms. Johnson's allegation that "there was unauthorized access to her FMLA medical records." (Doc. 19-1, p. 135). Ms. Johnson's Amended Complaint fails to raise an "unauthorized access" claim. Instead, she asserts *different* FMLA claims, namely, that USAF restricted her from using approved leave, improperly denied leave, and retaliated against her for using leave. These claims were not exhausted and are preempted by the CSRA.
- **<u>Count VI</u>**, alleging gender discrimination under Title VII, is dismissed under Rule 12(b)(6). To state a claim for gender discrimination, an employee must demonstrate that she is a member of a protected class, was qualified for her job, suffered an adverse employment action, and at least some facts give rise to an inference of gender discrimination. *See Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 700 (8th Cir. 2006). The Amended Complaint alleges in conclusory fashion that Ms. Johnson was discriminated against on the basis of sex because her male counterpart received a disability accommodation that Ms. Johnson did not receive. The Amended Complaint fails to disclose the male comparator's disability, so the Court cannot meaningfully evaluate USAF's decision to accommodate him and not Ms. Johnson. The sex discrimination claim is therefore implausibly pleaded.

- **Count VII**, alleging a violation of the EPA, is dismissed under Rule 12(b)(6). Paragraphs 561 to 570 of the Amended Complaint recite the elements of an EPA claim. Ms. Johnson states no facts to show she was paid less than a male employed in the same job, working under similar conditions, and performing tasks requiring the same skill, effort, and responsibility. *See O'Reilly v. Daugherty Sys., Inc.*, 63 F.4th 1193, 1196 (8th Cir. 2023). The Amended Complaint is silent as to the skill, effort, responsibility, and working conditions that were required of similarly situated males. Ms. Johnson merely speculates that the reason she was denied promotions and paid less money was because of her sex. *See, e.g.*, Doc. 19 ¶ 565. This is not enough to state an EPA claim.
- **Count VIII**, alleging violations of the FLSA, is dismissed under Rule 12(b)(6). Ms. Johnson maintains that USAF violated the FLSA by failing to pay her at least the federal minimum wage for work she performed on FMLA leave. *See* Doc. 19, ¶ 575. However, FMLA leave is *unpaid*. *See Darby v. Bratch*, 287 F.3d 673, 680 (8th Cir. 2002). Other factual allegations supporting this claim make little sense, such as Ms. Johnson's assertion that USAF "failed to include [her] in the pay pool for 2020 and 2021 . . . resulting in a reduction in earnings." (Doc. 19, ¶ 575(c)). As for her allegations concerning "fraudulent" performance evaluations, *see* Doc. 19, ¶ 575(f)(i), and "retaliatory disciplinary actions," *see id.* ¶ 575(f)(iii), resulting in decreased pay, the Court finds that these disputes are actually personnel matters that should have been raised before the MSPB—but were not.
- **Count IX**, alleging a violation of the Privacy Act, is dismissed under Rule 12(b)(1). *See Barhorst v. Marsh*, 765 F. Supp. 995 (E.D. Mo. 1991) ("Where, as here, an

employee challenges the propriety of an agency's personnel decisions, he must look to the CSRA and not the Privacy Act to obtain redress.").

- **Count X**, alleging violations of the CSRA, is dismissed under Rule 12(b)(6). The CSRA has no independent significance beyond providing the procedure and standard of review for evaluating a claim. Accordingly, no standalone claim for the violation of the CSRA is cognizable.
- **Count XI**, alleging a violation of the False Claims Act, is also dismissed under Rule 12(b)(6). "[N]othing in the Act . . . allows a private individual to sue selected federal agencies to recover money from the United States, and to reap a sizable profit in the process." *Juliano v. Fed. Asset Disposition Ass'n,* 736 F. Supp. 348, 352, 353 (D.D.C. 1990), *aff'd.,* 959 F.2d 1101 (D.C. Cir. 1992).
- **Count XII**, alleging violations of the Administrative Procedures Act ("APA"), is dismissed under Rule 12(b)(1). The APA does not provide an independent basis for subject matter jurisdiction for judicial review of a federal agency's action, nor does the APA create a separate cause of action the Court may review. *See Billops v. Dep't of the Air Force*, 725 F.2d 1160, 1162–64 (8th Cir. 1984).
- **Count XIII**, alleging constructive discharge, is dismissed under Rule 12(b)(1). A breach of contract action under state law is clearly preempted by the CSRA. *See Gergick v. Austin,* 997 F.2d 1237, 1239 (8th Cir. 1993) (civil service laws provide exclusive remedy for wrongful discharge from governmental jobs).

## IV. CONCLUSION

For the reasons explained above, **IT IS ORDERED** that USAF's Motion to Dismiss (Doc. 30) is **GRANTED IN PART AND DENIED IN PART**. Only Counts III and IV of the Amended Complaint will proceed.

**IT IS SO ORDERED** on this 2nd day of September, 2026.

TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE